## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GEORGE CARTER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 06-0113 (RCL)** |
| | ) |
| **RONALD DIXON, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

### FEDERAL DEFENDANT'S MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1), (5), and (6), federal defendant[1] Ronald Dixon respectfully moves to dismiss plaintiff's complaint in this action. In support of this motion, the Court is respectfully referred to the accompanying memorandum of points and authorities, exhibits, and declaration of David McAdams, Unit Manager at Federal Correctional Institution Gilmer. A proposed Order consistent with this motion is attached hereto.

---

[1] This motion is filed on behalf of federal defendant Ronald Dixon, a former Department of Justice Attorney, in his official capacity only. He has not been personally served with the summons and complaint pursuant to the applicable Rules, and therefore, this defendant is not properly before the Court in his individual capacity.

Respectfully Submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____/s/_____
JOHN HENAULT, D.C. BAR # 472590
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-1249

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GEORGE CARTER,                          )
                                        )
           Plaintiff,               )
                                        )
    v.                              ) Civil Action No. 06-0113 (RCL)
                                        )
RONALD DIXON, et al.,                   )
                                        )
           Defendants.              )
_____ )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

      Plaintiff, a *pro se* prisoner, has named Ronald Dixon, a former Assistant United States

Attorney with the United States Attorney's Office for the District of Columbia, and two

unknown clerks of the Superior Court as defendants in this action.  See, e.g., Compl. p. 4.

      Plaintiff is currently serving a 9-27 year term of imprisonment for Armed Robbery,

imposed on March 18, 1986; a 90 day term of imprisonment for Escape, imposed on November

19, 1986; a 13 to 39 year term of imprisonment for Armed Robbery, imposed o March 24, 1988;

and a 1 year term of imprisonment for Carrying a Pistol Without a License, imposed on October

13, 1988.  See Complaint.

      This *pro se* complaint was filed pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, 18

U.S.C. § 1001, and implicitly, under Bivens.[2]  Plaintiff asserts charges of civil conspiracy, fraud,

and forgery against former Assistant United States Attorney (AUSA) Ronald Dixon with regard

to an October 14, 1988 D.C. Superior Court Judgment and Commitment Order maintained in

_____

    [2]   Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

plaintiff's file and included as part of his sentence computation until February 27, 2006. <u>See</u>

Def. Ex. A. The plaintiff also alleges that defendant Dixon violated his constitutional rights

under the Fifth, Eighth, and Fourteenth Amendments. <u>See</u> <u>Compl.</u>

In his complaint, plaintiff states that after filing a petition for <u>habeas</u> <u>corpus</u> in the U.S.

District Court for the Northern District of West Virginia (1:04cv175) on August 6, 2004

regarding the Federal Bureau of Prisons' calculation of his good time credits, he discovered the

existence of the allegedly false court document when it was listed as a government exhibit in the

declaration of Duane Brown, a Systems Manager at Federal Correctional Institution Gilmore. <u>Id.</u>

at p. 2-3. Plaintiff alleges that this document, created in reference to criminal case F5773-86H-

K, was hidden from him and had caused him to receive unfair classification hearings by

increasing his total base scores, custody levels, etc. <u>Id.</u> Plaintiff claims that the document said

he appeared in court on October 14, 1988, but that this was not possible due to the fact that he

had been sentenced in another case on the previous day and shipped directly from court to FCI-

Petersburg. <u>See</u> Pl. Ex. 11.

On or around October 25, 2005, it came to the attention of the Superior Court of the

District of Columbia that two orders were signed sentencing the defendant to serve one year in

prison for Count K (Carrying a Pistol Without a License). <u>See</u> Def. Ex. B. One order is marked

F5773-86K and is dated 10/13/88. <u>Id.</u> The other order is marked case number F4270-86K and is

dated 10/14/88. <u>Id.</u> It was determined that the order signed for case number F5773-86 was in

error. <u>Id.</u> Case number F5773-86 was replaced by case number F4270-86 prior to the

defendant's trial. <u>Id.</u>

On February 27, 2006, pursuant to Super. Ct. R. Crim. Pro. 35(a), the court ordered that

the sentencing order bearing case number F5773-86K, dated 10/13/88, and sentencing the

2

defendant as to "count K - one year" was vacated.  Id.  Plaintiff's sentence computation was updated to reflect an amended Order entered by the D.C. Superior Court on October 25, 2005. Id.

The effect of this order was that plaintiff's term of imprisonment was immediately changed from 68 years and 90 days to 67 years and 90 days.  See Def. Ex. C.  Plaintiff's projected release date was changed from October 13, 2031 to February 14, 2031.  Id.

On September 15, 2005, four months prior to filing his current complaint with this Court, plaintiff filed an action against the Federal Bureau of Prisons (BOP) and its employees in the U.S. District Court, Northern District of West Virginia, Civ. No. 1:05-cv-00130-IMK-JES, pursuant to 42 U.S.C. § 1983, ,42 U.S.C. § 1985, the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and under the Privacy Act, 5 U.S.C. 552a(d), (e)(5), (g)(1)(C), and (g)(4).  See Def. Ex. D.  In that action, plaintiff alleged that the BOP had failed to maintain an accurate system of records or investigate his challenge to the accuracy of his records with regard to the erroneous Judgment and Commitment Order.  Id.

On August 23, 2006, United States Magistrate Judge James E. Seibert recommended that plaintiff's case be dismissed with prejudice for failure to state a claim under the Privacy Act or for any constitutional violations.  Id.  Plaintiff filed an objection to the report on August 30, 2006.  A final decision from the Honorable Irene M. Keeley is expected shortly.

In plaintiff's current complaint, as to defendant Dixon, plaintiff alleges the following specific acts: (1) that defendant acted vindictively beyond the scope of his duties to punish plaintiff for "emerging victoriously" on a murder case F5773-86(I); and (2) that defendant conspired to falsify a court document with the assistance of the Clerk of the Superior Court.  See Compl. p. 4.

3

As relief, plaintiff appears to request compensatory damages in the amount of $3 million dollars, punitive damages in the amount of $3 million dollars, attorney's fees and costs, and any other relief deemed just.  See Compl. p. 18.

Plaintiff's complaint should be dismissed in its entirety.  The reasons for this dismissal include the following:

1.     Federal defendant Dixon is entitled to absolute immunity;

2.     Plaintiff has failed to effect proper service on defendant Dixon;

3.     There is no subject matter jurisdiction;

4.     Defendant Dixon cannot be sued for money damages in his official capacity; and

5.     Plaintiff fails to state a claim within the jurisdiction of this Court.

The issue that plaintiff brings before the court is now moot as the questioned Order is no longer being used to calculate plaintiff's sentence.  Additionally, plaintiff has failed to establish that he is entitled to monetary damages.

## ARGUMENT

## I.     PLAINTIFF'S CLAIMS ARE BARRED BY ABSOLUTE IMMUNITY

Former Department of Justice attorney Ronald Dixon, against whom plaintiff seeks to affix liability, is entitled to absolute immunity for claims arising from his official duties.  For most officials, immunity is qualified rather than absolute when the claim is based on the Constitution.  Butz v. Economou, 438 U.S. 478 (1978).  However, there are some officials whose special functions require absolute immunity regardless of the nature of the alleged violation.

The Supreme Court has long recognized an absolute immunity for prosecutors from personal liability for actions related to the performance of their public duties.  See, e.g., Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993); Yaselli v. Goff, 275 U.S. 503 (1927).  In Yaselli v.

4

Goff, the Court held that a prosecutor could not be sued for malicious prosecution.  Later, in

Imbler v. Pachtman, 424 U.S. 409, 420 (1976), the Supreme Court held that this absolute

immunity barred constitutional tort claims.  The Court reasoned:

> The common-law immunity of a prosecutor is based upon the same considerations
> that underlie the common-law immunities of judges and grand jurors acting
> within the scope of their duties.  These include concern that harassment by
> unfounded litigation would cause a deflection of the prosecutor's energies from
> his public duties, and the possibility that he would shade his decisions instead of
> exercising the independence of judgment required by his public trust.

Id. at 422-23.  The Court also stressed that there were substantial checks against abuse.  Aside

from the prospect of criminal sanctions for willful deprivations of constitutional rights, "a

prosecutor stands perhaps unique, among officials whose acts could deprive persons of

constitutional rights, in his amenability to professional discipline by an association of his peers."

Id. at 429.

The prosecutor's immunity extends to any activities that are "intimately associated with

the judicial phase of the criminal process."  Id. at 430.  This includes "initiating a prosecution"

and "presenting the . . . case."  Id. at 431.  Indeed, the Supreme Court has reiterated this concept

in Burns v. Reed, 500 U.S. 478 (1991), wherein it held that a prosecutor is entitled to absolute

immunity for participating in probable cause hearing which led to the issuance of a search

warrant.  The Court's opinion in Imbler leaves no doubt about its intent to cloak all advocatory

functions with immunity:

> [S]uits that survived the pleadings would pose substantial danger of liability even
> to the honest prosecutor.  The prosecutor's possible knowledge of a witness'
> falsehoods, the materiality of evidence not revealed to the defense, the propriety
> of a closing argument, and--ultimately in every case--the likelihood that
> prosecutorial misconduct so infected a trial as to deny due process, are typical of
> issues with which judges struggle in actions for post-trial relief, sometimes to
> differing conclusions.

5

Id. at 425; accord Burns v. Reed, 500 U.S. at 492.

Courts have applied immunity to cloak every aspect of the criminal prosecution, from grand jury proceedings to plea bargains and appeals.  Absolute immunity has been held to apply to presenting evidence before a grand jury, Morrison v. Baton Rouge, 761 F.2d 242, 247-48 (5th Cir. 1985); see Burns, 500 U.S. at 490 and n.6; to reckless prosecution based on inadequate investigation, Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985); threatening criminal prosecution, Myers v. Morris, 810 F.2d 1437, 1446 (8th Cir. 1987); obtaining criminal complaints and warrants based on false or coerced statements, Joseph v. Patterson, 795 F.2d 549, 555 (6th Cir. 1986); Burns, supra; advocating a position on bail, Lerwill v. Joslin, 712 F.2d 435, 438-39 (10th Cir. 1983); striking a deal with defense counsel to obtain evidence, Krohn v. United States, 742 F.2d 24, 30 (1st Cir. 1984); destruction and falsification of evidence, Heidelberg v. Hammer, 577 F.2d 429, 432 (7th Cir. 1978); securing the attendance of witnesses and the accused at trial, Hamilton v. Daley, 777 F.2d 1207, 1213 (7th Cir. 1985); solicitation and subordination of perjured testimony, Taylor v. Kavanagh, 640 F.2d 450, 452 (2nd Cir. 1981); introduction of illegally seized evidence, Taylor, 640 F.2d at 452; agreeing to dismiss charges in return for dropping civil action, McGruder v. Necaise, 733 F.2d 1146, 1148 (5th Cir. 1984); and misconduct in the plea arrangement process, Myers v. Morris, 810 F.2d at 1446.

Indeed, the Court of Appeals in this Circuit has concluded that absolute immunity bars, inter alia, claims that prosecutors failed to present exculpatory evidence to grand jury and did present false testimony.  See Gray v. Bell, 712 F.2d 490, 494, 502 (D.C. Cir. 1983).  That Court has also held that prosecutorial immunity protects the prosecutor from liability for allegedly concealing exculpatory evidence from the grand jury and for allegedly manipulating evidence before the grand jury, as well as for allegedly withholding after indictment material evidence that

6

is exculpatory. <u>Moore v. Valder</u>, 65 F.3d 189, 192-94 (D.C. Cir. 1995); <u>Sims</u>, 29 F. Supp. 2d at 959 (absolute immunity bars claims that prosecutors used perjured testimony in the criminal prosecution).

As the scope and breadth of these decisions indicate, courts are in general agreement that absolute immunity must be applied liberally when claims are asserted against government attorneys for actions they have taken in carrying out their public responsibilities in the course of the judicial process. None of the alleged actions of Department of Justice attorney Ronald Dixon are outside of the fundamental responsibilities as an advocate for the government, and as such are cloaked with the broad absolute immunity delineated in the above cases.[3]

If the Court should conclude for any reason that federal defendant Dixon is not entitled to absolute immunity, then he is, nevertheless, entitled to qualified immunity. <u>Burns</u>, 111 S. Ct. at 1939. In <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), the Supreme Court held that federal officers are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Id.</u> at 818; <u>accord</u> <u>Conn v. Gabbert</u>, 119 S. Ct. 1292, 1295 (1999); <u>Crawford-El v. Britton</u>, 523 U.S. 574 (1998); <u>McSurley v. McClellan</u>, 697 F.2d 309, 316 (D.C. Cir. 1982); <u>Krohn v. United States</u>, 742 F.2d 24 (1st Cir. 1984); <u>Davis v. Scherer</u>, 486 U.S. 183, 191 (1984). The relevant inquiry is whether the defendant's alleged actions violated any clearly established law or were objectively reasonable. <u>Anderson v. Creighton</u>, 483 U.S. 635, 637 (1987); <u>Martin v. Malhoyt</u>, 830 F.2d 237, 253 (D.C. Cir. 1987); <u>see also</u> <u>Butz v. Economou</u>, 438 U.S. 478 (1978); <u>Scheuer v.</u>

---

[3] Although the undersigned do not represent the unknown clerks of the Superior Court, we note that, as judicial officers, clerks are entitled to absolute immunity. <u>See</u> <u>Sharma v. Stevas</u>, 790 F.2d 1486 (D.C. Cir. 1986) (Clerk of the Supreme Court has absolute quasi-judicial immunity because of his challenged activities were an integral part of the judicial process).

Rhodes, 416 U.S. 232, 244-45 (1974).  As the Supreme Court explained, qualified immunity

protects from suit "all but the plainly incompetent or those who knowingly violate the law."

Briggs v. Malley, 475 U.S. 335, 341 (1986).

Plaintiff's complaint fails to state a claim for a violation of a clearly established right by

Mr. Dixon– he simply alleges that defendant conspired with unknown clerks to create false

documents to be used against him.  He has provided no factual basis to establish any of his

alleged claims of forgery or conspiracy.  Thus, defendant Dixon should be dismissed on the basis

of qualified immunity, if the Court finds that he is not shielded by absolute immunity.

## II.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION AND INSUFFICIENT SERVICE OF PROCESS

To the extent that plaintiff's claims are against defendant Dixon in his individual

capacity, and the Court determines that the claims are not precluded by immunity, this Court

lacks personal jurisdiction over the individual defendant, as plaintiff has failed to effect proper

service.[4]  It is well-established that, in an action against a federal employee in an individual

capacity, the individually sued defendant must be served with process in accordance with rules

applicable to individual defendants.  See Simpkins v. District of Columbia Govt., 108 F.3d 366

(D.C. Cir. 1997); Lawrence v. Acree, 79 F.R.D. 669, 670 (D.D.C. 1978); Navy, Marshall &

---

[4]  A *pro se* litigant such as plaintiff must be afforded more latitude to correct defects in
service of process in his pleadings than litigants who are represented by counsel.  Moore v.
Agency for Int'l Dev., 944 F.2d 874, 876 (D.C. Cir. 1993).  In light of the several other reasons
calling for dismissal of this case, especially defendant's immunity from suit, no purpose would
be served by granting such indulgences in this case.  If, however, the Court decides not to
dismiss this case on the several grounds set forth herein, defendant requests an opportunity to
determine whether he will waive any defenses based on Federal Rules of Civil Procedure
12(b)(4) or (5).  Defendant is not presently prepared to waive those defenses.

Gordon v. U.S. Int'l Dev.-Corp. Agency, 557 F. Supp. 484, 489 (D.D.C. 1983); Delgado v. Bureau of Prisons, 727 F. Supp. 24 (D.D.C. 1989).

Rule 4 requires that a copy of the summons and complaint be delivered to the defendant (or his appointed agent) personally, or be left "at his dwelling house or usual place of abode with some person of suitable age and discretion" who resides there. Lawrence, 79 F.R.D. at 670; Delgado, 727 F. Supp. at 27; see Simpkins, 108 F.3d 366 (defendants in Bivens action must be served as individuals, pursuant to Rule 4(e)).

Where, as here, a plaintiff seeks relief against a federal employee in an individual capacity, the Court must acquire personal jurisdiction in order to enter a binding judgment, Reuber v. United States, 750 F.2d 1039, 1049 (D.C. Cir. 1984); Griffith v. Nixon, 518 F.2d 1195 (2d Cir.), cert. denied, 423 U.S. 995 (1975), and the general rule is that a plaintiff has the burden of establishing personal jurisdiction. Reuber, supra 750 F.2d at 1050.

The Court's records do not indicate that proper service has been effected on defendant Dixon in his individual capacity in this action – to the extent he has been served, service occurred by delivering a copy of the process to his former place of employment, not his "dwelling house or usual place of abode."

Personal jurisdiction cannot be obtained, and for this reason service of process cannot properly be effectuated upon the individual defendant. The complaint should, therefore, be dismissed pursuant to Fed. R. Civ. P. 4(m) and 12(b)(2), (4) and (5).

## III.    THIS COURT LACKS SUBJECT MATTER JURISDICTION

Plaintiff asserts subject matter jurisdiction under 42 U.S.C. § 1983-1985, 18 U.S.C. § 1001, and implicitly under Bivens against federal defendant Dixon in his official and personal capacity for alleged violations of his Fifth, Eighth, and Fourteenth Amendment rights.

9

The proper assertion of jurisdiction in a <u>Bivens</u> action is 28 U.S.C. §1331, which deals with federal question. Section 1331 is the proper assertion of jurisdiction in a <u>Bivens</u> case as it confers original jurisdiction of civil actions arising under the Constitution to the district court.

1.      **Plaintiff Cannot Sue a Federal Employee under 42 U.S.C. § 1983**

Section 42 U.S.C. § 1983 relates to actions against individuals who violate constitutional rights of another "under color of state law." <u>Soeken v. Herman</u>, 35 F. Supp. 2d 99, 102, n. 3 (D.D.C. 1999) (citing <u>District of Columbia v. Carter</u>, 409 U.S. 418 (1983)). <u>See also</u> <u>Garcia v. Thornburgh</u>, No. Civ. A. 90-2353, 1991 WL 257982, 3 (D.D.C. Nov. 22, 1991) ("Section 1983 provides remedy for rights deprivations occurring under state law . . . "). In this case, federal defendant Dixon is a ***federal*** employee acting under the color of ***federal*** law. Thus, he does not act under color of state law and plaintiff's assertion of jurisdiction under § 1983 against federal defendant Dixon is erroneous.

2.      **Plaintiff Cannot Bring a Valid Conspiracy Claim**

Plaintiff sues for unlawful conspiracy, pursuant to 42 U.S.C. §§ 1985(3) as indicated on the face of his complaint. For a Section 1985(3) claim, a plaintiff must allege: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." <u>Graves v. U.S.</u>, 961 F. Supp, 314, 320 (D.D.C. 1997) (<u>citing</u> <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 91 (1971)); <u>Hobson v. Wilson</u>, 737 F.2d 1, 14 (D.C. Cir. 1984) (stating that § 1985 applies only to tortious interferences with the rights of others that is motivated by class-based invidiously discriminatory animus); <u>Jackson v.</u>

10

Thornburg, 702 F. Supp. 9, 12 and n.5 (D.D.C. 1988) (prisoners are not a suspect class entitled to heightened scrutiny under an equal protection analysis).

Conclusory allegations of conspiracy do not meet the pleading standards of § 1985. Boykin v. Bloomsburg University of Pennsylvania, 893 F. Supp. 378 (M.D. Pa.), aff'd, 91 F.2d 122 (3d Cir.), cert. denied, 117 S. Ct. 739 (1995) (suspicions, speculation, and feelings are not sufficient to support claim that university officials conspired to deprive employee and his family of their civil rights.); Williams v. Reilly, 743 F. Supp. 168 (S.D.N.Y. 1990) (claim that failed to allege membership in protected class, contained vague and conclusory allegations of conspiracy, provided no specific factual basis for allegation that defendants conspired together, and provided no specific acts by defendants, failed to state a claim under § 1985).

Plaintiff has failed to provide any factual basis that defendant Dixon agreed to conspire against him based on his race. Furthermore, plaintiff has failed to allege any specific acts taken by defendant Dixon, or any other John Doe, in furtherance of the alleged conspiracy. The plaintiff has failed to allege that there was ever an agreement or "meeting of the minds" between the defendant and some unknown conspirator to forge court documents because of his membership in a protected class; such a "meeting of the minds" is an essential element of a conspiracy claim. Breckenridge 403 U.S. at 102; McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993); Pro-Choice Network of W. New York v. Project Rescue W. New York, 799 F. Supp. 1417, 1429 (W.D.N.Y. 1992); Taliaferro v. Voth, 774 F. Supp. 1326, 1332 (D.Kan. 1991); Chambers v. Omaha Girls Club, 629 F. Supp. 925, 936 (D.Neb. 1986).

Plaintiff cannot merely allege that defendant Dixon acted lawfully, but with an unconstitutional motive to support an allegation of violation of plaintiff's rights. Hobson v. Wilson, 737 F.2d at 29 (requiring nonconclusory evidence of such intent). The plaintiff's § 1985

claim also must be dismissed because at the pleading stage, a plaintiff is required to allege a connection between the overt acts, the furtherance of the conspiracy and the plaintiff's injury. Watson v. Clark, 716 F. Supp. 1354, 1358 (D.Nev. 1989) (granting motion to dismiss where plaintiff failed to allege specific facts supporting alleged conspiracy: "In order to support a claim for conspiracy, plaintiff must allege facts showing particularly what acts a defendant performed to carry the conspiracy into effect, how those acts fit into the conspiracy, and how injury to the plaintiff was foreseeable therefrom.") (citing Hoffman v. Halden, 268 F.2d 280, 295 (9th Cir. 1959), overruled on other grounds, Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962)); Ibarra v. Las Vegas Metro. Police Dept., 572 F. Supp. 562, 565 (D.Nev. 1983); Morpurgo v. Board of Higher Educ., 423 F. Supp. 704, 713 (S.D.N.Y. 1976) (granting motion to dismiss and holding that complaints based on conspiracy provisions of the Civil Rights Act cannot rest on vague and conclusory allegations but must allege with at least some degree of particularity the overt acts by defendants that were reasonably related to the promotion of the conspiracy).

Finally, the plaintiff's § 1985 claim must be dismissed because he has failed to allege that any of the defendant's actions were motivated by some class-based, invidiously discriminatory animus. United Bhd. of Carpenters and Joiners of Am. v. Scott, 463 U.S. 825, 835 (1983) (holding that § 1985(3) requires allegation of some class-based, invidiously discriminatory animus behind conspirators' actions); Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1088 (2d Cir. 1993) (holding that for plaintiff to make out § 1985(3) claim, allegation of conspiracy must be motivated by some racial or perhaps otherwise class-based invidiously discriminatory animus). Plaintiff has not even alleged that he belongs to an arguably-protected class, and plaintiff has failed to allege a single fact that would support a claim that any of the defendant's actions were taken because of his status as a member of any protected class. The

16

allegation that the defendant wanted to "punish plaintiff for emerging victoriously on his murder case," see Comp. at p. 4, does not sufficiently state a claim under § 1985(3), as a matter of law.

Plaintiff's section 1985 claims that defendant Dixon is in a conspiracy against him to deprive him of his constitutional rights must fail.   Fatal to his suit, he cannot establish a conspiracy for purposes of a section 1985 claim.  A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between parties 'to inflict a wrong against or injury upon another,' and 'an overt act results in that damage.'"  Graves v. U.S., 961 F. Supp. 314, 320 (D.D.C. 1997).  Even though the court in that case found that there was enough evidence for the jury to have found a conspiracy, the facts of this case do not.  Even with a liberal reading of these complaints, they fail to allege facts that would constitute a conspiracy. The District of Columbia Circuit has explained that, in a conspiracy setting, "unsupported factual allegations which fail to specify in detail the factual basis necessary to enable [the defendants] to intelligently prepare their defense, will not suffice to sustain a claim of government conspiracy to deprive [plaintiff] of [his] constitutional rights."  Martin v. Malhoyt, 830 F.2d 237, 258 (D.C. Cir. 1987).  Plaintiff has made no factual showing that would support his conclusory statement that a conspiracy existed.  Therefore, his claim should not be permitted to continue and should be dismissed.

## IV.    DEFENDANT CANNOT BE SUED FOR DAMAGES IN HIS OFFICIAL CAPACITY

To the extent that plaintiff seeks damages against defendant Dixon in his official capacity, his claims must be dismissed absent a waiver of sovereign immunity.  Meyer v. Reno, 911 F. Supp.11 (D.D.C. 1996); Marshall v. Reno, 915 F. Supp. 426 (D.D.C. 1996); Deutsch v.

U.S. Dept. of Justice, 881 F. Supp. 49, 55 (D.D.C. 1995). The inherent sovereign immunity of the United States protects it and its agencies from suit absent express waiver. See United States v. Nordic Village, 503 U.S. 30 (1992). Sovereign immunity also bars suits for money damages against officials in their official capacities for nondiscretionary acts absent a specific waiver by the government. Clark v. Library of Congress, 750 F.2d 89, 101-02 (D.C. Cir. 1984). Plaintiff's complaint does not contain any colorable basis for such a waiver. Therefore, to the extent plaintiff asserts claims for damages against defendant Dixon in his official capacity, such claims must be dismissed for lack of subject matter jurisdiction.

Plaintiff's claims are based on alleged violations of his Constitutional rights. However, the United States has not waived sovereign immunity for money damages claims premised on alleged Constitutional violations. Meyer v. Reno, 911 F. Supp.11 (D.D.C. 1996); Marshall v. Reno, 915 F. Supp. 426 (D.D.C. 1996); Deutsch v. U.S. Dept. of Justice, 881 F. Supp. 49, 55 (D.D.C. 1995).[5]

## V.    PLAINTIFF FAILS TO ASSERT A VALID FIFTH, EIGHTH OR FOURTEENTH AMENDMENT CLAIM

Plaintiff alleges that he was not given equal protection under the law and that the erroneous Order in his file resulted in "heightened scrutiny that evoked parity of treatment"and a violation of his Fifth and Fourteenth Amendment rights. See Compl. p. 13. He also claims that he was denied certain benefits such as low custody, early parole, and a low base point score

_____

    [5] McBryde v. Committee to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the United States, 264 F.3d 52, 55 (D.C. Cir. 2001) ("If events outrun the controversy such that the court can grant no meaningful relief, the case should be dismissed as moot.") (citations omitted); see also Pharmachemie B.V. v. Barr Laboratories, Inc., 276 F.3d 627, 631 (D.C. Cir. 2002); Fraternal Order of Police v. Rubin, 134 F. Supp.2d 39, 41 (D.D.C. 2001) (no justiciable controversy is presented when the question to be adjudicated as been mooted by subsequent developments).

which caused him "significant hardship." Id. **Specifically, plaintiff alleges that he would have been brought before the Board of Parole a year earlier if not for the erroneous Order.** Id. Although plaintiff mentions the Eighth Amendment in his complaint, he does not discuss any violation of his Eighth Amendment rights in his complaint. Even reviewing the plaintiff's allegations in the light most favorable to him (motion to dismiss standard), the plaintiff's complaint is not sufficient to survive defendant's motion to dismiss for failure to state a claim.

Plaintiff alleges a constitutional claim under the Fifth Amendment Due Process Clause. To state a claim for violation of his due process rights under the Fifth Amendment, plaintiff must identify a protected liberty interest that has been denied. Sandin v. Conner, 115 S. Ct. 2293 (1995). Plaintiff, in his complaint, appears to assert a liberty interest in the length of his prison sentence and in various benefits he claims he was denied. In order for a liberty interest to be involved, plaintiff must either allege that defendant's actions increased his period of confinement or that additional restrictions were placed upon him that imposed an "atypical and significant hardship on [plaintiff] in relation to the ordinary incidents of prison life." Id., 115 S. Ct. 2293. Plaintiff has provided no factual basis that his period of confinement was increased or that additional restrictions were placed upon him.

The plaintiff also contends that the defendant violated his rights under the Fourteenth Amendment. The Fourteenth Amendment reads as follows:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

19

The Fourteenth Amendment refers to actions committed by the State.  Thus, it has no application to defendant Dixon, a federal employee who was not engaged in actions under the "color of state law."

Finally, as stated above, plaintiff mentions the Eighth Amendment in his complaint but fails to discuss any factual basis for a violation of his Eighth Amendment rights in his complaint. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. Amend. VIII.  When evaluating claims for cruel and unusual punishment, courts make a two-part inquiry: (1) whether the defendants acted with a sufficiently culpable state of mind (the "subjective component"), and (2) whether, in light of "contemporary standards of decency," the alleged deprivation was sufficiently serious to rise to the level of a constitutional violation (the "objective component").  Wilson v. Seiter, 501 U.S. 294, 298 (1991).

The subjective component is satisfied by showing "deliberate indifference" by prison officials.  Id. at 303.  See Estelle v. Gamble, 429 U.S. 97, 105 (1976) ("deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment).  "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  Farmer v. Brennan, 511 U.S. 825, 835 (1994).  See Whitley v. Albers, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.").  To constitute cruel and unusual punishment, conduct "must involve more than ordinary lack of due care for the

prisoner's safety; mere negligence will not suffice." Morgan v. Dist. of Columbia, 824 F.2d

1049, 1057 (D.C. Cir. 1987) (citing Whitley, 475 U.S. at 319).

The objective component is satisfied by showing that the conditions of confinement

"involve the wanton and unnecessary infliction of pain" or are "grossly disproportionate to the

severity of the crime warranting imprisonment." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

See Caldwell v. Caesar, 150 F. Supp.2d 50, 61 (D.D.C. 2001) ("Conditions of confinement will

violate the Eighth Amendment if the deprivation is sufficiently serious, judged objectively, that

is, when the prisoner is denied 'the minimal civilized measure of life's necessities.' ") (quoting

Farmer, 511 U.S. at 834) (quoting Rhodes, 452 U.S. at 347)).

What is necessary to establish an "unnecessary and wanton infliction of pain," varies

according to the nature of the alleged constitutional violation." Whitley at 320.

The plaintiff fails to discuss how his Eighth Amendment rights were violated.

Additionally, the October 14, 1988 Order did not effect any aspect of plaintiff's custody

classification. See Ex. E  Declaration of David McAdams.  Based on plaintiff's extensive arrest

history and the violent nature of his offenses, plaintiff is a medium security inmate with a

greatest severity offense, with or without the additional one year sentence imposed through the

October 14, 1988 Order. Id.  Moreover, plaintiff's ability to participate in education and work

programs was not effected by the order. Id.  Plaintiff is currently employed by UNICOR as a

welding apprentice. Id.  Plaintiff's conclusory allegations that he suffered adverse consequences

because of the Order are insufficient.[6]

---

[6]  To the extent that plaintiff alleges the damage he suffered was not receiving a parole
hearing earlier, that claim is of no effect.  As set forth in the Declaration of Mr. McAdams,
plaintiff was schedule to have a parole hearing in March 2006.  As evidenced by exhibit F,
which is the hearing summary for his March 2006 parole hearing (which was filed in another

Construing these claims under the liberal rules applicable to *pro se* complaints, there still remains no arguable legal or factual basis upon which the complaint could go forward. Plaintiff has failed to state a claim for violation of his Fifth, Eighth, or Fourteenth Amendment rights.

**CONCLUSION**

For the foregoing reasons, the complaint should be dismissed against federal defendant Dixon.

---

case brought by plaintiff), plaintiff had the March 2006 hearing and his parole was denied. Thus, there is no basis for a claim that he should have received an earlier hearing which would have potentially resulted in his release.

Respectfully Submitted,


_____/s/_____

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


____/s/_____

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/_____

JOHN HENAULT, D.C. BAR # 472590
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-1249

23

**CERTIFICATE OF SERVICE**

On November 9, 2006, I caused a true and correct copy of the foregoing to be sent by first

class mail, postage prepaid to:


George Carter
Reg. No. 01466-000
Gilmer Federal Correctional Institution
P.O. Box 6000
Glenville, WV 26351


                                              _____/s/_____
                                              JOHN HENAULT, D.C. BAR # 472590
                                              Assistant United States Attorney